IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40811-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALEJANDRO JOSE LOMELI, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, C.J. — Alejandro Jose Lomeli appeals his jury convictions for first degree assault while armed with a firearm to maintain or advance his membership in a gang, drive-by shooting, second degree malicious mischief, third degree malicious mischief, and second degree unlawful possession of a firearm. He argues (1) the trial court erred by admitting irrelevant and prejudicial propensity evidence without conducting the required ER 404(b) analysis, (2) trial counsel was ineffective for failing to object to certain evidence, and (3) the State failed to present sufficient evidence that he was the shooter.

We disagree with his arguments and affirm.

BACKGROUND

The parties are familiar with the case, and a detailed recitation of the background and evidence is not necessary.

On August 27, 2023, in Walla Walla, Washington, a man entering a convenience store was shot in the parking lot by another driver after yelling at the driver to slow down.

A store attendant working that night heard gunshots and saw a late model Subaru Legacy, with distinctive features, come around the corner. The attendant recognized the Subaru and knew the driver from prior contacts. When the Subaru stopped, the store attendant made eye contact with the driver and recognized him as the same person he had seen at the store on prior occasions.

Surveillance video from the store showed the moment of the shooting, and that, just before shooting at the victim, the driver made a hand sign associated with the "Westside 18th Street Gang." Rep. of Proc. (RP) at 781. The footage showed the Subaru leaving the station with its lights off at about 12:34 a.m.

The victim was unable to identify the driver in a photo lineup. But the store attendant identified Lomeli as the person he saw driving the Subaru at the store at the time of the shooting.

Additional evidence tied Lomeli to the Subaru and the shooting. Lomeli's girlfriend, who lived in the Tri-Cities area, expected to meet him the night of the shooting but when she called his cell phone around midnight, it went to voicemail. He never

2

arrived, and she did not see his car. She knew he was sometimes called "Lil Menace" and had a large "18" tattoo on his forearm.

Evidence was also produced showing that Lomeli was associated with the Westside 18th Street Gang.

Cell phone data placed Lomeli's phone near the store around the time of the shooting. Two cell phone towers near the store registered calls to Lomeli's phone from his girlfriend and calls to and from known gang members.

Several days after the shooting, a "Flock"[1] camera in Kennewick captured a photograph of a Subaru Legacy with a specific license plate number and the same distinctive features described by the store clerk. Lomeli had been previously stopped by law enforcement in the same Subaru, which was registered to the mother of Lomeli's child.

*Facebook Messages Evidence*

During the investigation, law enforcement began communicating with Lomeli on Facebook through an undercover officer posing as a fictitious woman who initiated the conversation with Lomeli by sending him a "waving emoji." Twenty-one days after the shooting, Lomeli asked the fictitious woman if she wanted to drive to "Tri." The fictitious woman responded, asking Lomeli to come to Walla Walla instead, to which

---

[1] Automated license plate reader utilized to capture vehicle details.

Lomeli replied: "I just came from there." Ex. 31. The pair continued to exchange messages, seeming to coordinate a plan to meet in a hotel room in Walla Walla for a sexual encounter. At one point in the conversation, after the woman confirmed she would be alone in the hotel room, Lomeli responded: "Damn its ganna [sic] be a mission." Ex. at 33.

Lomeli followed through on his messages and arrived to meet the fictitious woman in Walla Walla. He was arrested there by awaiting police officers.

*Procedure*

The State charged Lomeli with first degree assault while armed with a firearm to maintain or advance his membership in a gang, drive-by shooting, second degree malicious mischief, third degree malicious mischief, and second degree unlawful possession of a firearm.

The jury ultimately found Lomeli guilty on all counts.

Lomeli appeals.

ANALYSIS

1.  FACEBOOK EVIDENCE

Lomeli challenges the trial court's admission of Facebook messages between himself and the fictitious girl. On appeal, he argues the evidence amounted to inadmissible propensity evidence and that the court failed to conduct the required ER 404(b) analysis on the record and provide a limiting instruction to the jury. He also

argues the evidence was not res gestae evidence, irrelevant to proving the shooter's identity, and unduly prejudicial.

### A. *Additional Background*

Lomeli moved in limine to prohibit the State from admitting the Facebook messages between him and the fictitious girl. Defense counsel argued the messages were irrelevant under ER 402 and prejudicial. Specifically, counsel argued that Lomeli's statement, made 21 days after the shooting, that he had "just" been to Walla Walla, was "too speculative" and was not evidence that Lomeli was in Walla Walla on the night of the shooting. Counsel maintained that introducing the entire string of messages was even less relevant and more prejudicial. The State acknowledged that the string of messages was not critical but argued that Lomeli's comment was some evidence that he had recently been in Walla Walla. The court reserved ruling on the issue.

At trial, the State sought to admit exhibits 30 through 39, which contained the screenshots of the Facebook messages between Lomeli and the fictitious woman. Defense counsel again objected as irrelevant and unduly prejudicial. While acknowledging that the first two messages contained some evidence that Lomeli admitted being in Walla Walla at an unknown time, defense counsel reiterated that he was objecting to the entire string of Facebook messages: "And to clear the record, the objection during the motions in limine was also that this entire contact had no bearing on whether Mr. Lomeli was present in Walla Walla on August 27." RP at 674. Counsel also

5

argued the discussion of soliciting sex at a hotel contained within the Facebook messages was irrelevant to whether Lomeli was the shooter and unduly prejudicial because it was unrelated to any of the elements of the charged crimes.

In response, the prosecutor argued the evidence was not prejudicial and that the State should be permitted to show "basically the res gestae of how the investigation unfolded" and corroborated the girlfriend's testimony. RP at 672-73. The court then admitted exhibits 32 through 39 without additional explanation.

### B. Error Preservation

As an initial matter, the State contends Lomeli's ER 404(b) argument is unpreserved. We agree. In addition, we conclude his limiting instruction and res gestae arguments are likewise unpreserved.

We generally decline to review issues raised for the first time on appeal. *See* RAP 2.5(a). "The rule reflects a policy of encouraging the efficient use of judicial resources. The appellate courts will not sanction a party's failure to point out at trial an error which the trial court, if given the opportunity, might have been able to correct to avoid an appeal and a consequent new trial." *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). The rule derives from the principle that trial counsel is obligated to seek a remedy to errors as they occur, or shortly thereafter. *See City of Seattle v. Harclaon*, 56 Wn.2d 596, 597, 354 P.2d 928 (1960).

Here, before and during trial, defense counsel did not argue that the Facebook messages constituted evidence of propensity or prior bad acts under ER 404(b) and did not seek a limiting instruction. Nor did counsel challenge the State's assertion that the evidence was part of the res gestae of the offense. As a result, these arguments are not preserved for review. Accordingly, we decline to review them.

However, we consider Lomeli's preserved objection to the evidence as irrelevant and unduly prejudicial after a review of the relevant standard of review and legal principles.

### C. Standard of Review and Legal Principles

Trial courts have considerable discretion in their evidentiary rulings, and we review such decisions under a deferential abuse of discretion standard. *State v. Quaale*, 182 Wn.2d 191, 196, 340 P.3d 213 (2014). "A trial court abuses its discretion when a decision is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v. Howland*, 180 Wn. App. 196, 204, 321 P.3d 303 (2014) (internal quotation marks omitted) (quoting *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006)).

Evidence is generally admissible if it is relevant. *See* ER 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. The relevancy threshold is very low and "[e]ven minimally

7

relevant evidence is admissible." *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189

(2002). However, relevant evidence "may be excluded if its probative value is

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury, or by considerations of undue delay, waste of time, or needless

presentation of cumulative evidence." ER 403. "Where identity of the perpetrator of a

crime is at issue, any evidence tending to identify the accused as the guilty person is

relevant." *State v. Coe*, 101 Wn.2d 772, 781-82, 684 P.2d 668 (1984).

Because the erroneous admission of evidence is not a constitutional error, we

review it under the nonconstitutional harmless error standard. *State v. Gower*, 179 Wn.2d

851, 854, 321 P.3d 1178 (2014). "Under this standard, an 'error is not prejudicial unless,

within reasonable probabilities, had the error not occurred, the outcome of the trial would

have been materially affected.'" *State v. Booth*, 22 Wn. App. 2d 565, 584, 510 P.3d

1025 (2022) (internal quotation marks omitted) (quoting *State v. Aljaffar*, 198 Wn. App.

75, 86, 392 P.3d 1070 (2017)). Improper admission of evidence is harmless error "if the

evidence is of minor significance in reference to the overall, overwhelming evidence as a

whole." *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997). This

determination is made by measuring the admissible evidence of guilt against any

prejudice caused by the inadmissible evidence. *Id.* The burden is on the defendant to

show that the error was not harmless. *State v. Barry*, 183 Wn.2d 297, 317-18, 352 P.3d

161 (2015).

*D. Analysis*

Lomeli argues the Facebook messages were not relevant to the disputed issue of identity and, even if marginally relevant, were unfairly prejudicial. He further argues their admission was not harmless. The State responds that the messages satisfied ER 401's low threshold for relevance and that, in any event, any error in admitting them was harmless. We agree with the State, in-part.

The portion of the Facebook messages in which Lomeli stated he was "just" in Walla Walla satisfied ER 401's low threshold for relevance. The primary disputed issue at trial was the shooter's identity. The State's theory was that Lomeli, who lived in the Tri-Cities area, was the shooter in Walla Walla. In that context, Lomeli's statement in the Facebook messages that he had just been in Walla Walla had at least some tendency to make it more probable that he was in Walla Walla at the time of the shooting. Thus, the trial court did not abuse its discretion in admitting that portion of the Facebook messages.

That said, the portions of the messages referring to Lomeli's planned sexual encounter were irrelevant and unfairly prejudicial. Once the jury heard Lomeli's statement that he had recently been in Walla Walla, the later discussion about meeting at a hotel for sex did not make it any more or less probable that Lomeli was the shooter. Instead, those messages portrayed Lomeli negatively for reasons unrelated to the charged

crimes. Accordingly, the trial court abused its discretion in admitting the Facebook messages concerning the sexual encounter.

Even so, any error in admitting the sexual encounter Facebook messages was harmless. Those messages were only a minor part of the State's case in reference to the overall evidence. Given the State's evidence, as discussed below, there is no reasonable probability the admission of the sexual encounter Facebook messages materially affected the outcome of the trial. Thus, error in admitting those messages was harmless.

2. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Lomeli argues his trial counsel provided ineffective assistance by failing to object to the admission of the portion of the Facebook messages in which Lomeli stated he had recently been in Walla Walla. That statement appeared in exhibit 31 and exhibit 32. Lomeli asserts that, although counsel objected to the statement as reflected in exhibit 32, counsel failed to object to the same statement as reflected in exhibit 31. In response, the State argues that defense counsel objected to the statement in both exhibits, and therefore Lomeli cannot establish deficient performance. We agree with the State.

When arguing ineffective assistance of counsel, a defendant bears the burden to show that (1) defense counsel's performance fell below an objective standard of reasonableness and, if so, (2) there is a reasonable probability that but for counsel's poor performance the outcome of the proceedings would have been different. *State v. Grier*,

171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). If either prong is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

Lomeli cannot establish deficient performance because the record shows defense counsel did object to the challenged statement.[2] Lomeli focuses on the fact that the statement appeared in more than one exhibit. But that does not change the fact that defense counsel objected before trial to the admission of the statement "and to clear the record, the objection during the motions in limine was also that *this entire contact* had no bearing on whether Mr. Lomeli was present in Walla Walla on August 27" *in any form*. RP at 674 (emphasis added).

Lomeli also fails to establish prejudice. Even assuming counsel could have framed the objection more precisely as to exhibits 31 and 32 during trial, there is no reasonable probability the outcome of the trial would have been different. As discussed above, the statement that Lomeli had "just [come] from" Walla Walla was at least minimally relevant to identity, and any error in admitting the remaining Facebook messages was harmless. In addition, as noted below, the State presented substantial independent evidence identifying Lomeli as the shooter. Because he establishes neither deficient performance nor prejudice, his ineffective assistance of counsel claim fails.

---

[2] For clarity, this issue is separate and unrelated to the prior issue. Relevant to the first issue, defense counsel did not object on ER 404(b) grounds. Whereas, relative to this issue, defense counsel did object to the admission of the exhibits containing Facebook messages.

3.   SUFFICIENCY OF THE EVIDENCE

Lomeli contends the State failed to prove he was the shooter for the purposes of the drive by shooting and assault charges because no witness saw him fire the gun, the victim did not identify him, and the State's case rested on circumstantial evidence linking him only to the Subaru.  The State responds that, viewing the evidence in the light most favorable to the State, its evidence was sufficient to prove Lomeli was the shooter.  We agree with the State.

"The sufficiency of the evidence is a question of constitutional law that we review de novo."  *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).  This court's review "is highly deferential to the jury's decision."  *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014).

Due process requires the State to prove every element of a crime beyond a reasonable doubt to secure a conviction.  State v. Aver, 109 Wn.2d 303, 310, 745 P.2d 479 (1987); U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, § 3. When reviewing a challenge to the sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt."  *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."  *Id.*  But, "the existence of a fact cannot rest upon guess, speculation[,] or conjecture."  *State v. Hutton*, 7 Wn. App. 726,

728, 502 P.2d 1037 (1972). Circumstantial evidence receives the same weight as direct evidence. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Appellate courts defer to the fact finder on the resolution of conflicting testimony, credibility determinations, and the persuasiveness of the evidence. *Thomas*, 150 Wn.2d at 874-75.

Viewed in the light most favorable to the State, and drawing all reasonable inferences in favor of the State, the evidence was sufficient for the jury to find that Lomeli was the shooter. The store attendant testified that immediately after hearing the gunshots he saw the late-1990s Subaru Legacy fleeing the store, made eye contact with the driver, and recognized him from prior visits to the store. Surveillance footage showed the moment the driver of the Subaru shot the victim, flashed a gang sign and then fled. The store attendant later identified Lomeli as the driver of the Subaru in a photo lineup and again at trial.

There was significant evidence tying Lomeli to the Subaru, including a Flock camera video and previous contact with Lomeli while driving the Subaru.

In addition, cell phone tower evidence placed Lomeli's cell phone near the store around the time of the shooting, including calls associated with Lomeli's then-girlfriend and with known "Westside 18th Street Gang" members shortly after the shooting.

13

Taken together, this circumstantial evidence was sufficient to permit the jury to infer that Lomeli was the shooter.

Lomeli's contrary arguments do not alter that conclusion. Although the victim did not identify Lomeli and no witness saw Lomeli actually pull the trigger, the State was entitled to prove identity through circumstantial evidence. *See Thomas*, 150 Wn.2d at 874 (circumstantial evidence carries the same weight as direct evidence). Moreover, we do not reweigh the evidence or reassess witness credibility. *See Thomas*, 150 Wn.2d at 874-75 (we defer to the jury's resolution of credibility determinations and persuasiveness of the evidence). The jury was free to credit the store attendant's identification, the Subaru evidence, the cell phone and tower evidence, as well as gang-related evidence.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Cooney, J.